UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JUAN URRABAZO RODRIGUEZ, § | |
| § | |
| Petitioner, § | |
| VS. § | CIVIL ACTION NO. 4:13-CV-1302 |
| § | |
| LORIE DAVIS, *et al*, § | |
| § | |
| Respondents. § | |

## MEMORANDUM AND ORDER

This case is before the Court on Petitioner Juan Urrabazo Rodriguez' Petition for Writ of Habeas Corpus and Respondent Lorie Davis' Motion for Summary Judgment. Having carefully considered the Petition, the Motion, and the arguments and authorities submitted by the parties, the Court is of the opinion that respondent's motion should be GRANTED, and Rodriguez' petition should be DENIED.

I.   Background

On January 10, 2008, Detective Danny Junek of the College Station Police Department responded to a child abuse call. 2 Tr. at 15-18.[1] Police had received information that a child, G.R., was sexually abused by Rodriguez, her grandfather. *Id.* at 19, 22. After speaking to G.R., Junek arranged for a forensic interview at a local child advocacy center. *Id.* at 21. G.R. alleged that the incident occurred in the attic of Rodriguez' home. *Id.* at 21-22.

Junek also spoke to Rodriguez. He said that Rodriguez was calm and was willing to speak to him. Junek reported that Rodriguez did not appear shocked when Junek informed him of the allegations. Rodriguez did say, however, that he did not know why G.R. would make up

---

[1]   "Tr." refers to the transcript of Rodriguez' trial.

such a story. *Id.* at 22-27. By way of possible explanation, Rodriguez stated that "he and his family were very affectionate, that they hugged and kissed probably more than the ordinary." *Id.* at 28. Rodriguez denied intentionally touching G.R. in an inappropriate manner. *Id.* at 46.

Rodriguez claimed that G.R. "reached around him and hugged him." *Id.* at 29. He also acknowledged that he "did reach out and grabbed her and could have accidentally touched her crotch area," *id.* at 29-30, but he denied that G.R. did anything to provoke intimate behavior, *id.* at 30. Junek testified that Rodriguez said that "some kids, they want to see what turns you on," *id.* at 31, a comment that Junek thought was strange.

G.R. was ten years old at the time of Rodriguez' trial, *id.* at 84, and nine years old at the time of the incident, *id.* at 90. She is Rodriguez' granddaughter. *Id.* at 88.

G.R. testified that Rodriguez "did stuff" to her in the attic and the living room. *Id.* at 93-94. She testified that nobody else was present when the incident in the attic occurred, and it occurred in the back of the attic, away from the ladder. *Id.* at 102-03. That night, G.R. told her mother what happened. *Id.* at 108. The next day, the police were informed. *Id.* G.R. also testified about other incidents of sexual molestation by her grandfather, beginning when she was five years old. *Id.* at 111-17.

G.R.'s mother, Teresa, is Rodriguez' daughter. Teresa has three daughters, A.R., who was seventeen at the time of the trial, M.R. who was fifteen, and G.R., who was ten. *Id.* at 142. The family lived in San Antonio, but M.R. lived with Rodriguez in College Station. Teresa and G.R. went to College Station to pick M.R. up for a family trip to Pennsylvania. *Id.* at 143.

Teresa testified that she went to the grocery store, but G.R. stayed with Rodriguez to help decorate the house for Christmas. *Id.* at 147. Teresa and G.R. slept in the same room. Teresa described G.R. as "real clingy" and said that she "seemed sad." *Id.* at 148. After they went to

bed, G.R. started to cry and said "Grandpa hurt me." *Id.* at 149. When Teresa asked G.R. what she meant, G.R. said that "she was up in the attic helping grandpa and that grandpa pulled her pants down and put his finger in her and then licked his finger." *Id.*

The jury found Rodriguez not guilty in regard to the alleged incident in the living room. The jury convicted Rodriguez of aggravated sexual assault for the incident in the attic. CR at 1-2, 112.[2]

During the punishment phase of Rodriguez' trial, the State presented evidence that Rodriguez resigned his position with the Bexar County Probation Department following an accusation of sexual abuse by one of his probationers. 3 Tr. at 6-35. The State also presented evidence that Rodriguez sexually molested numerous female family members, including both of G.R.'s sisters (Rodriguez' granddaughters), and three of his own sisters, over a span of decades. 3 Tr. at 39-91.

The defense presented several witnesses who testified that Rodriguez was a kind, loving father and husband, and a person of good character. Female witnesses testified that Rodriguez never tried to molest them. *See* 3 Tr. at 93-178. The jury assessed punishment at life imprisonment. CR at 113.

The Court of Appeals affirmed the conviction and sentence, *Rodriguez v. State*, 345 S.W.3d 504 (Tex. App. – Waco 2011). Rodriguez filed a petition for discretionary review ("PDR"), but the Texas Court of Criminal Appeals ("TCCA") refused it on August 24, 2011. *Rodriguez v. State*, No. PD-0277-11 (Tex. Crim. App. Aug. 24, 2011).

Rodriguez filed an application for a state writ of habeas corpus. The TCCA denied relief without written order. *Ex Parte Rodriguez*, No. WR-79,166-01 (Tex. Crim. App. Apr. 17, 2013).

---

[2]   "CR" refers to the Clerk's Record.

He then filed this federal petition. Respondent moved for summary judgment on November 30, 2016. Rodriguez did not respond to that motion.

II. The Applicable Legal Standards

A. The Antiterrorism and Effective Death Penalty Act

This federal petition for habeas relief is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 335-36 (1997). Under the AEDPA federal habeas relief based upon claims that were adjudicated on the merits by the state courts cannot be granted unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Kitchens v. Johnson*, 190 F.3d 698, 700 (5th Cir. 1999). For questions of law or mixed questions of law and fact adjudicated on the merits in state court, this court may grant relief under 28 U.S.C. § 2254(d)(1) only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent]." *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir.), *cert. denied*, 534 U.S. 885 (2001). Under the "contrary to" clause, this court may afford habeas relief only if "'the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts.'" *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000), *cert. denied*, 532 U.S. 915 (2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 406 (2000)).

The "unreasonable application" standard permits federal habeas relief only if a state court decision "identifies the correct governing legal rule from [the Supreme Court] cases but

unreasonably applies it to the facts of the particular state prisoner's case" or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 406. "In applying this standard, we must decide (1) what was the decision of the state courts with regard to the questions before us and (2) whether there is any established federal law, as explicated by the Supreme Court, with which the state court decision conflicts." *Hoover v. Johnson*, 193 F.3d 366, 368 (5th Cir. 1999). A federal court's "focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence." *Neal v. Puckett*, 239 F.3d 683, 696 (5th Cir. 2001), *aff'd,* 286 F.3d 230 (5th Cir. 2002) (en banc), *cert. denied sub nom. Neal v. Epps*, 537 U.S. 1104 (2003). The sole inquiry for a federal court under the 'unreasonable application' prong becomes "whether the state court's determination is 'at least minimally consistent with the facts and circumstances of the case.'" *Id.* (quoting *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997)); *see also Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001) ("Even though we cannot reverse a decision merely because we would reach a different outcome, we must reverse when we conclude that the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'").

The AEDPA precludes federal habeas relief on factual issues unless the state court's adjudication of the merits was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(2); *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The state court's factual determinations are presumed correct unless rebutted by "clear and convincing evidence." 28

U.S.C. § 2254(e)(1); *see also Jackson v. Anderson*, 112 F.3d 823, 824-25 (5th Cir. 1997), *cert. denied*, 522 U.S. 1119 (1998).

B.  The Standard for Summary Judgment in Habeas Corpus Cases

"As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir.), *cert. denied*, 531 U.S. 831 (2000). In ordinary civil cases a district court considering a motion for summary judgment is required to construe the facts in the case in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). Where, however, a state prisoner's factual allegations have been resolved against him by express or implicit findings of the state courts, and the prisoner fails to demonstrate by clear and convincing evidence that the presumption of correctness established by 28 U.S.C. § 2254(e)(1) should not apply, it is inappropriate for the facts of a case to be resolved in the petitioner's favor. *See Marshall v. Lonberger*, 459 U.S. 422, 432 (1983); *Sumner v. Mata*, 449 U.S. 539, 547 (1981). In reviewing factual determinations of the Texas state courts, this court is bound by such findings unless an exception to 28 U.S.C. § 2254 is shown.

III. Analysis

Rodriguez' petition contends that he received ineffective assistance of counsel at trial. To prevail on a claim for ineffective assistance of counsel, Petitioner

> must show that . . . counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). In order to prevail on the first prong of the *Strickland* test, Petitioner must demonstrate that counsel's representation fell below an objective

standard of reasonableness. *Id.* at 687-88. Reasonableness is measured against prevailing professional norms, and must be viewed under the totality of the circumstances. *Id.* at 688. Review of counsel's performance is deferential. *Id.* at 689.

The Supreme Court has explained that when a state court has adjudicated a claim of ineffective assistance of counsel on the merits, the petitioner bears an especially heavy burden. *See Harrington v. Richter*, 562 U.S. 86, 105 (2011). In this case, Rodriguez argues that defects in the state habeas corpus process were so significant that this Court should not give any deference to the state habeas court's findings and conclusions. It is unnecessary to determine whether Rodriguez' complaints about the state habeas process are correct, however. As discussed below, even under a *de novo* standard of review, Rodriguez fails to demonstrate that he is entitled to relief.

Rodriguez contends that his counsel failed to investigate evidence that the assault in the attic never occurred. Specifically, he cites affidavits by his son Miguel, stating that Miguel stood at the bottom of the attic ladder and would have known if something inappropriate occurred in the attic.

When assessing the reasonableness of an attorney's investigation, a court must "consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins v. Smith*, 539 U.S.510, 527 (2003). To establish that an attorney was ineffective for failure to investigate, a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial. *See United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).

In an affidavit executed on September 9, 2011, Miguel said that he and his family were living with Rodriguez on the date in question. SH at 55.[3] When Miguel arrived home from work that day, his sister Teresa and G.R. were there. After the family decorated the Christmas tree, Miguel helped Rodriguez put empty boxes, which had held decorations, in the attic. G.R. and her three year old cousin Placido climbed into the attic. Miguel states that Rodriguez was "getting after both" of the children for getting in his way. The children came down from the attic and, Miguel states, G.R. was upset that Rodriguez told them to leave the attic. Miguel stated that he remained at the bottom of the ladder because he was afraid Placido would fall or that the children would sneak back into the attic. *Id.* Miguel states that the G.R. and her sister then watched television with Rodriguez, and that G.R. "was happy and giddy after she got over being upset." The following day, the family went to a restaurant to celebrate Miguel's birthday and "everyone had fun and a great time." *Id.*

Miguel executed a second affidavit on August 29, 2012. In this affidavit, Miguel states that he met with Rodriguez' trial counsel, Jim W. James, before trial at James' office. He states that he told James that he was helping his father with the empty boxes, and that he would have been aware if anything inappropriate happened. *Id.* at 58. Miguel states that James told Miguel that he wanted him to testify at trial, and Miguel said that he was ready to do so. He was not called to testify during the guilt-innocence phase, and states that "I was very confused . . . but I figured he knew what he was doing." *Id.*

Attorney James also submitted an affidavit. He states that he is an honors graduate of the University of Texas Law School, had been an Assistant District Attorney, and had been in private practice for more than twenty five years at the time of trial. He had handled numerous

---

[3] "SH" refers to the record of Rodriguez' state habeas corpus proceeding.

criminal matters, including narcotics and capital murder cases. He was board certified in criminal law. *Id.* at 87.

Before trial, the State provided James with witness statements and a video of the complainant. James was thus aware of a number of extraneous offenses.[4] He acknowledges that he spoke to Miguel before trial, but states that Miguel told him he was in the house, but not in the attic. James went to the house to see the attic, and noted that it had "a drop down ladder type stairway . . . ." *Id.* at 87-88.

James asserts that he was aware of recent Texas case law holding that a defense claim that the complainant was fabricating her story would open the door to extraneous offense evidence[5] James did not wish to do so during the guilt-innocence phase, as he believed this would destroy any chance of acquittal. *Id.* at 87. In response, Miguel submitted a third affidavit asserting that he was at the base of the ladder and that "[t]here is no way that improper contact could have occurred without some alarm having been raised." *Id.* at 138.

The record shows that counsel did investigate. Relevant to Rodriguez' claim, counsel spoke to Miguel before trial, and viewed the crime scene. Crediting Miguel's assertion that he was at the base of the ladder at all relevant times, his story is not inconsistent with G.R.'s. G.R. testified that the assault occurred at the back of the attic, away from the ladder. 2 Tr. at 102-03. She also testified that it was brief. Therefore, the assault could have happened as G.R. said without Miguel noticing anything amiss.

---

[4] These are summarized above in the discussion of the punishment phase evidence.

[5] *See, e.g., Wheeler v. State*, 67 S.W.3d 879, 887 n.22 (Tex. Crim. App. 2002)("An extraneous offense may be admissible to rebut the defense in a child sexual assault case that the defendant is an innocent victim of a 'frame up' . . . .").

Moreover, the record establishes that counsel was aware of Miguel's story, and made a strategic decision that any benefit to calling Miguel was outweighed by the likelihood that his testimony would open the door to extraneous offense evidence. Counsel points out that the jury deliberated for two days on the question of Rodriguez' guilt (when it was unaware of the extraneous offenses), but only briefly before sentencing him to life imprisonment (after hearing the extraneous offense evidence), SH at 88, suggesting that his judgment about the damaging effect of the extraneous offense evidence was correct.

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable. . . ." *Strickland*, 466 U.S. at 690–91. The record makes clear that counsel was aware of Miguel's possible testimony, conducted reasonable investigation, and made a strategic decision based on that investigation and his knowledge of relevant law not to call Miguel to testify during the guilt-innocence phase.[6] That decision was reasonable, and is "virtually unchallengeable." *Id.* Rodriguez therefore fails to demonstrate that his trial counsel was ineffective, and he is not entitled to relief.

IV. Conclusion

For the foregoing reasons, Rodriguez fails to raise a viable claim for habeas relief. His petition must be dismissed with prejudice for the reasons stated in this opinion.

V. Certificate of Appealability

Rodriguez has not requested a certificate of appealability ("COA"), but this Court may determine whether he is entitled to this relief in light of the foregoing rulings. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) ("It is perfectly lawful for district court's [sic] to deny COA *sua sponte*. The statute does not require that a petitioner move for a COA; it merely

---

[6] Miguel did testify during the punishment phase that Rodriguez was a good father and husband, and was a generous man. 3 Tr. at 162-64.

states that an appeal may not be taken without a certificate of appealability having been issued.") A petitioner may obtain a COA either from the district court or an appellate court, but an appellate court will not consider a petitioner's request for a COA until the district court has denied such a request. *See Whitehead v. Johnson*, 157 F.3d 384, 388 (5th Cir. 1988); *see also Hill v. Johnson*, 114 F.3d 78, 82 (5th Cir. 1997) ("[T]he district court should continue to review COA requests before the court of appeals does."). "A plain reading of the AEDPA compels the conclusion that COAs are granted on an issue-by-issue basis, thereby limiting appellate review to those issues alone." *Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997).

A COA may issue only if the petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also United States v. Kimler*, 150 F.3d 429, 431 (5th Cir. 1998). A petitioner "makes a substantial showing when he demonstrates that his application involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are suitable enough to deserve encouragement to proceed further." *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir.), *cert. denied*, 531 U.S. 966 (2000). The Supreme Court has stated that:

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

This Court has carefully considered Rodriguez' claim. The Court finds that the claim is foreclosed by clear, binding precedent. This Court concludes that under such precedents, Rodriguez has failed to make a "substantial showing of the denial of a constitutional right." 28

U.S.C. § 2253(c)(2). This Court concludes that Rodriguez is not entitled to a certificate of appealability.

VI.  Order

For the foregoing reasons, it is ORDERED as follows:

A. Respondent's motion for summary judgment (Dkt. No. 7) is GRANTED;

B. Petitioner Juan Urrabazo Rodriguez' Petition for Writ of Habeas Corpus (Dkt. No. 1) is in all respects DENIED; and

C. No certificate of appealability shall issue.

The Clerk shall notify all parties and provide them with a true copy of this Memorandum and Order.

SIGNED on this 20th day of March, 2017.

_____
Kenneth M. Hoyt
United States District Judge